[No. 7,326.—Department One.]

## ADIN BULLARD v. HIS CREDITORS.

INSTRUCTIONS—FRAUD.—An instruction is erroneous which conveys to the mind of the jury the idea that they are not authorized to find *fraud* upon a simple preponderance of the evidence.

ID.—ID.—PRESUMPTION.—It may require more evidence to overthrow a presumption that one has not committed an affirmative or positive and active fraud than that he has not denied an honest debt; but such a difference should be called to the attention of the jury in language of careful discrimination, lest they should be led to the belief that a mere preponderance of evidence will not justify a verdict of guilty of fraud in a civil case.

APPEAL—COSTS.—The transcript being unnecessarily voluminous, the appellant not allowed costs.

ID.—ID.—CASE EXPLAINED.—*Hatch* v. *Bayley*, 12 Cush. 27.

APPEAL from a judgment of the County Court of the County of Butte, discharging the plaintiff from his debts, and from an order denying the motion of the Capital Savings Bank, the opposing creditor, for a new trial. SAFFORD, J.

After the decision in Department, the respondent filed his petition that the appeal be reheard in Bank, and the application was denied.

*Armstrong & Carey*, for Appellant.

The instruction was erroneous. The affirmative of an issue may be established by a preponderance of evidence only; and this, whether the issue be fraud or any other question. (Bigelow on Fraud, 474; Code Civ. Proc. §§ 2061, 1981, 1958, 1860, 1861; *Seligman* v. *Kalkman*, 8 Cal. 143.)

*F. C. Lusk*, for Respondent.

McKINSTRY, J.:

The 17th instruction, given to the jury at the request of counsel for plaintiff, reads as follows:

" Each of all the charges made against the petitioner depends upon the fact whether he has been guilty of fraud.

" To sustain any or all of said charges you must find him guilty of fraud.

" As to the evidence necessary to sustain a charge of fraud, the Court instructs you as follows:

" The law abhors fraud, but it is unwilling to impute it on slight and trivial evidence, and thereby cast an unjust reproach upon the character of the party against whom it is alleged. Such an imputation is grave in its character, and can only be sustained on satisfactory proof.  If the evidence is so conflicting that no conclusion can be reached, the charge is not sustained, upon the principle that the burden of proof is on the party who makes the charge ; and if he does no more than to make an equilibrium, he fails to make out his case.   Mere suspicion, leading to no certain result, is not sufficient.   A right will not be divested upon mere conjecture, or evidence loose and indeterminate in its character.   Fraud will never be imputed when the circumstances and facts on which it is predicated consist with honesty and purity of intention.

" The amount or weight of evidence that is sufficient proof of a fraudulent intent must be sufficient to satisfy the mind and conscience, and produce a satisfactory conviction or belief.   The proof must be clear and satisfactory.   It must be so strong and cogent as to satisfy a man of sound judgment of the truth of the allegations.   There must be evidence of tangible facts, from which a legitimate inference of fraudulent intent may be drawn. Circumstances affording a strong presumption are sufficient ; but the presumption must be drawn from pregnant facts, and not from far-fetched probabilities.   Inferences are to be drawn from such facts, not singly, but as a whole.   Fraud is never to be presumed, but must always be proved.   As an allegation of fraud is against the presumption of honesty, it requires stronger proofs than if no such presumption existed ; and in considering each charge of fraud made against the petitioner, you will apply to the evidence brought to sustain the charge the law as just given you ; and if the evidence fails to meet its requirements, you must find the charges unsustained, and render a verdict of not guilty."

The volume entitled " Bump on Fraudulent Conveyances " was opened and before counsel when the foregoing instruction was written.   (2nd ed. 484.)   But many remarks of the author, in the nature of limitations upon the language cited, are omitted from the instruction.   The instruction was prepared by cautiously culling selected passages from Bump.   These are some-

times given with slight changes of form, which, while not abso-
lutely contradicting the sense, confer on the language color and
weight not conferred by the original expressions : sometimes
entirely disconnected from the context.   Thus there was drawn
up before the jurymen a formidable array of extreme phrases
unexplained, tending, if not calculated, to mislead them.    A
comparison of the instruction, as given with a quotation of the
work referred to, will help to indicate the probable difference in
the effect produced upon the minds of the jury by the reading
of the one rather than the other.

" How much evidence is required to raise a presumption of
actual fraud cannot be determined according to any inflexible
rule.

" While the law abhors fraud, it is also unwilling to impute
it on slight and trivial evidence, and thereby cast an unjust re-
proach upon the character of the parties.    Such an imputation
is grave in its character, and can only be sustained on satisfac-
tory proof.    If the evidence is so conflicting that no conclusion
can be reached, the transaction must be sustained, upon the
principle that the burden of proof is on the party who assails it;
and if he does no more than create an equilibrium, he fails to
make out his case.    Mere suspicion, leading to no certain re-
sults, is not sufficient.    A legal title will not be divested upon
mere conjectures, or evidence loose and indeterminate in its
character.    Fraud will never be imputed when the circum-
stances and facts upon which it is predicated may consist with
honesty and purity of intention.    .

" It is not necessary, however, that the evidence tending to
the conclusion of fraud should be incapable of being accounted
for upon any other hypothesis.    There is no rule of evidence or
principle of law which requires that the circumstances must be
of so conclusive a nature and tendency as to exclude every other
hypothesis than the one sought to be established, in order to
authorize the inference of fraud from circumstantial evidence.

" What amount or weight of evidence is sufficient proof of a
fraudulent intent, is not a matter of legal definition.    If the evi-
dence is admissible as conducing in any degree to the proof of
the fact, the only legal test applicable to it upon such an issue
is its sufficiency to satisfy the mind and conscience, and produce

a satisfactory conviction or belief.   The proof, however, must be clear and satisfactory.   It must be so strong and cogent as to satisfy a man of sound judgment of the truth of the allegation.   It need not possess such a degree of force as to be irresistible; but there must be evidence of tangible facts, from which a legitimate inference of a fraudulent intent may be drawn.   Circumstances affording a strong presumption are sufficient; but the presumption must be drawn from pregnant facts, and not from far-fetched probabilities.   Inferences are to be drawn from such facts, not singly, but as a whole.   As an allegation of fraud is against the presumption of honesty, it requires stronger proof than if no such presumption existed.   As it is against a presumption of fact, perhaps often a slight one, it requires somewhat more evidence than would suffice to prove the acknowledgment of an obligation, or the delivery of a chattel.   It is not necessary, however, that the fraud shall be proved beyond a reasonable doubt.   Issues of fact in civil cases are determined by a preponderance of testimony, and the rule applies as well to cases in which fraud is imputed as to any other.   If the evidence produces a rational belief, it cannot be discarded, although some doubt remains.   If the evidence is of sufficient force to produce a preponderance of assent in favor of fraud, it is sufficient.   The payment of a full price does not purify a transaction, but is entitled to great weight when the proof of fraud is not clear."

We are forced to the conviction, that the instruction conveyed to the minds of the jurymen the idea that they were not authorized to find *fraud*, upon a *preponderance* of the evidence. Yet this is the rule in *all* civil cases.   (Code Civ. Proc. § 2061, subd. 5.)   In *Ford* v. *Chambers*, 28 Cal. 13, the Supreme Court said: "Issues of fact in civil cases are determined by a preponderance of testimony, and this rule applies as well to cases in which *fraud* is imputed as to any other."

Sentences are found in the work of Mr. Bump, immediately followed by others, which, perhaps, do not qualify those which precede them; but the last assist to explain the first, and are inserted to prevent the deduction of wrong inferences to which the first are liable.   These are not always inserted in the instruction.   Thus the sentences in Bump, to the effect that there

is no place in civil actions for the proposition, applicable to criminal proceedings; that the circumstances showing fraud must be of so conclusive a nature as to exclude every hypothesis except the guilt of the party charged—and which immediately succeed the statement, "fraud will never be imputed when the circumstances on which it is predicated consist with honesty and purity of intention"—are omitted from the instruction as given. Other like instances appear upon a comparison of the instruction with the words of the learned writer.

So also expressions are employed by Mr. Bump, which, although in a sense sustained by authority—inasmuch as they were used by a trial court in a particular case, and, on appeal, were held not to be fatally erroneous, in view of the circumstances—are yet objectionable when transferred to an *instruction*, without the accompanying illustration of the author, and are given in a case where, perhaps, different facts are involved. For example, the broad statement in the instruction: "As an allegation of fraud is against the presumption of honesty, it requires *stronger proofs* than if no such presumption existed." To this succeeds in Bump (but not in the instruction), " as it is against a presumption of fact, perhaps often a *slight one*, it requires *somewhat* more evidence than would suffice to prove the acknowledgment of an obligation, or the delivery of a chattel."

The case referred to by Mr. Bump is *Hatch* v. *Bayley*, 12 Cush. 27, in which the Judge of the Common Pleas charged the jury, with respect to an alleged fraudulent sale, that it was necessary for a defendant to adduce stronger proof to establish fraud than to prove a debt or sale. Mark how cautious the comments of Chief Justice Shaw. He says:

" These were obviously general remarks upon the nature of evidence in application to facts to be proved by it, and perhaps they are not stated with all the illustrations which accompanied them, or precisely as they were made.

" As we understand them, the judge intended to say, that he who alleges fraud against another is bound to prove it. That every man is presumed to act honestly, until the contrary is proved; that he who charges another with an act involving moral turpitude *or legal delinquency* must prove it; that as this is an allegation against a presumption of fact, it requires

somewhat more evidence than if no such presumption existed. It carried no direction as to the amount of evidence required, or as to the nature of evidence, whether positive or circumstantial, but only that, on the whole, it must be somewhat stronger; and we cannot perceive that such a direction is incorrect. The ordinary direction to the jury is, that he who charges fraud must prove it to the satisfaction of the jury. We think it not contrary to any principle or rule of law for the judge to inform the jury, that as the charge of fraud is a charge against a presumption of fact, perhaps often a slight one, yet the jury, in order to be satisfied, might require somewhat stronger evidence than would suffice to prove the acknowledgment of an obligation, or the delivery of a chattel. (1 Greenl. Ev. § 380.)"

These "obviously *general* remarks," perhaps, "not stated with the *illustrations* which accompanied them, or precisely *as they were made*," and by which the judge "*intended* to say (only?) that he who alleges fraud is bound to *prove it*," and which "carried no direction as to the amount of evidence required," did not seem to have done harm, although they departed from the ordinary direction "that he who charges fraud must prove it to the satisfaction of the jury." And the Supreme Court of Massachusetts did not think it contrary to any rule of law for the judge below to inform the jury that, "as the charge of fraud is a charge against a presumption of fact, perhaps often a *slight* one, yet, the jury, *in order to be satisfied, might* require *somewhat* stronger evidence," etc.

A party holding the affirmative of an issue must prove his case, and, in doing so, must overcome the presumption of the non-existence of the fact he has alleged. It may require more evidence to overthrow a presumption that one has not committed an affirmative or positive and active fraud than that he has not denied an honest debt. It is obvious, however, that such a difference should be called to the attention of the jury, if at all, in language of careful discrimination, lest they should be led to the belief that a mere preponderance of the evidence will not justify a verdict of guilty of fraud in a civil case.

The task assumed by the writer of a legal treatise differs from that of a judge who charges a jury. The one discusses and explains the legal principles related to his subject, with

sufficient fullness, at least, materially to assist the student in ascertaining and applying them under widely variant conditions. It is the duty of the other to present to non-professional minds, in clear and, as far as may be, succinct language, the legal propositions directly bearing upon the issues of fact submitted to the jury.

Very extended quotations from a text-book can rarely aid the jury, while they may tend to confuse by suggesting distinctions not applicable to the case. If, however, this method of charging a jury be resorted to, all the limitations and conditions (so far as they are applicable, and are upheld by well-reasoned cases or principle) mentioned or suggested by the author, should accompany the *excerpta* adopted by the Court, the Court being fully satisfied that whatever it adopts is fully sustainable.

Taking the instruction as a whole, we are convinced it must have strongly influenced the jury to disregard the proper rule as to the weight of evidence in cases like the present.

The transcript contains 1,182 folios of printed matter, consisting of the reporter's notes at length, questions and answers, remarks of Court and counsel, etc.

Judgment and order reversed, and cause remanded for a new trial—appellants to recover no costs on appeal.

Ross, J., and MORRISON, C. J., concurred.