# IN THE MATTER OF THE ESTATE OF HENRY J. ISAACS, DECEASED.

RECORD ON APPEAL FROM THE PROBATE COURT.—On an appeal from a decree of a Probate Court made upon a final accounting and settlement of an administrator's accounts, the petition and account filed with the view to a final settlement, are a part of the record to be used on appeal, without being made so by a bill of exceptions or statement.

INTEREST ON JUDGMENT AGAINST EXECUTORS.—Without an express contract in writing made by the testator, providing for a higher rate of interest than ten per cent per annum, the executors have no authority to consent to the entry of a judgment bearing a greater rate of interest than ten per cent per annum, and if they do so they should be charged with the excess of interest in their final account.

COMMISSIONS OF EXECUTORS.—When no compensation has been provided by the will, executors are entitled to commissions on all the estate which comes into their hands, and for which they are held responsible.

HOMESTEAD OF WIDOW.—The Probate Court has no authority to set apart money to a widow in lieu of a homestead.

APPEAL from the Probate Court, City and County of San Francisco.

There was no statement or bill of exceptions in the record.

14

The other facts are stated in the opinion of the Court.

*P. G. Buchan*, for Appellants.

If it was an error in judgment to have allowed this interest, the question then arises, how far executors are liable for a mere error in judgment ? The offer was made, the Court say, " on due consideration," and further, that the executors have neither " mismanaged nor wasted the estate."

With these findings before us, we say that in rejecting or admitting a claim upon an estate, executors and administrators act to some extent in a judicial capacity, and where they are not guilty of gross carelessness and negligence, they are not liable for mere errors in judgment.

The law throws the burden on the executor to exercise his judgment, and if he does so honestly, and " on due consideration," as the Court has found, that is sufficient.

" Where reasonable care and diligence have been exercised by executors, they will not be held responsible for losses which prudent management could not avoid." (*Voorhies* v. *Stoothoff*, 6 Halst. 145.) " Executors are not liable for the loss of the funds of the estate if they act with ordinary diligence." (*Calhoun's Estate*, 6 Watts, 185.) " Where an executor had, in good faith, paid taxes upon lands supposed to belong to the testator, but which did not, he was allowed the taxes paid in his account." (*Jennison* v. *Hapgood*, 10 Pick. 77.)

These cases are cited merely to show the general principle, and there is nothing in our statute that changes it. Sections two hundred and fifteen to two hundred and eighteen of the Probate Act define the general liability of executors. The two hundred and seventeenth section provides simply that " he shall not make profit by the increase, nor suffer loss by the decrease or destruction, *without his fault*, of any part of the estate."

To entitle the estate to the deduction which the Court has decreed, it should appear that the payment was not a mere error in judgment, if it was an error, but a culpable want of

attention to the business and interest of the estate. This is not so found, but on the contrary it is found that the executors did not " in any manner mismanage or waste the estate," and that they consented to the judgment " on due consideration."

*Spencer Reichert & Jarboe*, for Respondent.

No statement of the case was prepared or filed, and none appears in the transcript. (Probate Act, Sec. 299.)

The record on appeal should then consist only of the order appealed from, for there is no such thing in probate practice as a judgment roll. It is a term applicable to certain papers in ordinary civil actions only. (Practice Act, Sec. 203.)

The account of the executors and their petition are improperly in the transcript.

The decree recites that the executors were in error in allowing interest on the sworn judgment at a rate over ten per cent per annum. It does not pretend to recite what kind of error, whether slight, excusable, gross, or criminal ; whether error in judgment, of law or fact, or whether intentional error, nor how it occurred. The Court below " having *heard the witnesses and proofs of both parties on the subject*," formed, doubtless, a definite opinion as to the *kind* of error. It was not necessary that the decree should find the kind of error, nor indeed that there was any error at all. It was only necessary to have decreed that the executors were not entitled to the particular sum paid as one of their disbursements.

This Court has held, in two cases, that executors and administrators are not entitled to commissions on the amount of the homestead set apart by the Probate Court. (*Buchanan Estate,* 8 Cal. 507 ; *Tompkins' Estate,* 12 Cal. 125.)

The homestead and other property exempt from execution are required to be included in the inventory. (Probate Act, Secs. 107, 120, 121, 124.)

By the Court, CURREY, C. J.:

The executors of the last will and testament of Henry I. Isaacs, deceased, have appealed from the decree of the Probate Court of the City and County of San Francisco, made upon a final accounting and settlement of their administration and trust as such executors. The executors rendered their account, which was annexed to and made part of their petition praying a final settlement of their administration and a discharge from their trust. This petition and account was filed on the 6th of July, 1864. In due time the Court rendered its decree of final settlement and discharge of the executors. To the account rendered and filed the widow of the deceased, in her own behalf and as guardian of her infant children, filed exceptions. After " having heard the witnesses and proofs of both parties on the subject of the exceptions to said account, and a full investigation having been had, and the Court having duly considered the matter of said final account and all the proceedings of said executors," the Court found " that the said executors, in their account, have duly charged themselves with the whole of said estate, real and personal, which has come to their possession at the appraisement contained in the inventory, and also with all the increase, profit and income of the said estate; that they have also faithfully accounted for all losses by the decrease or destruction of any part of the estate, and by uncollected debts; that they are not responsible for said losses, and that the same are without their fault; that all the proceedings in the administration have been conducted fairly and justly, and in accordance with the provisions of the statute regulating the same; that the said executors have not in any manner mismanaged or wasted the estate, and that all proceedings necessary to a final settlement of said estate have been had."

Further, the Court found that the whole amount of the estate which had come to the hands of the executors and for which they accounted was forty thousand one hundred and twenty-two dollars and eighty-nine cents.

By the finding it appears that on the 7th of June, 1862, one Lewis Levason presented to the executors for allowance an account against the estate, claiming five thousand four hundred and seventy-three dollars and nine cents, with interest thereon from the 25th of March of the same year at the rate of one and a half per cent per month, which the executors rejected, and that thereupon Levason commenced an action in the District Court against them for its recovery, and that subsequently the executors, on due consideration, consented that judgment should go against the estate for the sum of four thousand nine hundred and nineteen dollars and thirty-four cents instead of the amount of five thousand four hundred and seventy-three dollars and nine cents claimed in the action; and that the sum of four thousand nine hundred and nineteen dollars and thirty-four cents should bear interest from said 25th of March at the rate of one and a half per cent per month. The judgment obtained by Levason with the interest that had accrued thereon was paid to him by the executors on the 1st of June, 1864. It amounted at that time to seven thousand and seventeen dollars and sixteen cents. The Court then decided that although the executors were right in allowing the amount of four thousand nine hundred and nineteen dollars and thirty-four cents as principal due upon Levason's demand, they were in error in allowing interest thereon at a rate exceeding ten per cent per annum, and therefore it was decreed that the difference between the rate allowed and ten per cent per annum, which amounted to eight hundred and fifty-three dollars and fourteen cents, should be charged to the executors and deducted from their commissions.

From the decree it appears that in the course of administration the Court had adjudged and allowed to the widow of the deceased five thousand dollars in lieu of homestead. The Court decreed that no percentage for commissions should be allowed the executors on said five thousand dollars.

Upon the final settlement, adjusted as above indicated by the decree of the Court, there was found a balance in the hands of the executors of one thousand six hundred and sixty-

six dollars and seventy cents, for the disposition of which the decree provided, and also the decree provided for the full and final discharge of the executors.

This appeal is, first, from that portion of the decree which disallows the interest in excess of ten per cent per annum, amounting to eight hundred and fifty-three dollars and fourteen cents, paid by the executors on the Levason judgment, and second, from that portion of the decree which adjudges that the executors were not entitled to commissions on the sum set apart to the widow in lieu of homestead.

*Record on appeal from Probate Court.*

I. The respondents, the widow and children of the deceased, by their counsel, have made a preliminary objection that the petition and account filed with the view to a final settlement is not properly a part of the record to be used on appeal, and that all this Court can look into is the decree of the Court below.

The Probate Act provides that every executor shall render a full account and report of his administration upon the expiration of one year from the time of his appointment, and further provides that every account rendered shall exhibit not only the debts which may have been paid, but also a statement of all debts which have been duly presented and allowed during the period embraced in the account. (Sec. 228.) When an account is rendered as required, a day is to be appointed for the settlement of it, upon which notice is to be given in a particular mode, (Sec. 233,) and on the day appointed, or any subsequent day to which the hearing may be adjourned by the Court, any person interested in the estate may appear and file his exceptions in writing to the account and contest the same. (Sec. 234.) The issue between the executor and contestant may be heard by the Court, and if necessary the Court may appoint one or more referees to examine the accounts and make report thereon, subject to confirmation. (Sec. 236.) The settlement of the account, and the allowance thereof by the Court, or upon appeal, shall be conclusive against all persons

in any way interested in the estate, except persons laboring under legal disability. (Sec. 237.) Before the account shall be allowed by the Court, it must appear that the notice required was given. (Sec. 238.) If it appear upon the settlement of the accounts of the executor at the end of the year that the entire property of the estate is exhausted by payment or distribution made as required by the provisions of the Act, such account shall be considered as a final account, and the executor shall be entitled to his discharge on producing and filing the necessary vouchers and proofs. (Sec. 243.) If upon the accounting of the executor as provided in the sections of the Probate Act referred to, the estate is found not to be in a proper condition for a final settlement, the Court may give such extension of time as may be reasonable for a final settlement of the estate, (Sec. 247,) and when thereafter the estate is in a proper condition to be closed the executor " shall render a final account and pray a settlement of his administration," (Sec. 248 ;) and if he neglect to render his account, the same proceedings may be had as prescribed in regard to the first account to be rendered by him ; and all the provisions relative to the first account, and the notice and settlement thereof, shall apply to his account presented for final settlement. (Sec. 249.) Thus it is seen that the petition, and especially the account filed and submitted, and the exceptions taken to the account by any person or persons interested, constitute, in part at least, the jurisdictional facts on which the decree of the Probate Court is founded, and are as necessary on appeal from the judgment or decree made on the settlement of the executor's account as are the pleadings in an ordinary civil action upon an appeal from a judgment or order therein.

The two hundred and ninety-seventh section of the Probate Act gives to the parties interested in the order, decree or judgment of the Probate Court made on the settlement of any account of an executor, or administrator, or guardian, the right to appeal when the amount in dispute is within the appellate jurisdiction of the Supreme Court. We think the objection taken by the respondents, that the petition and account are

not properly in the record on appeal, is not well founded, and therefore the same must be overruled. We next proceed to consider the merits of the appeal.

### Interest on judgment against executors.

II. The Court found that the executors had administered the estate justly and in accordance with the provisions of the statute regulating the same; that they had not in any manner mismanaged or wasted the estate, and that all proceedings necessary to a final settlement thereof had been had; and that upon due consideration they consented to the judgment of Levason for four thousand nine hundred and nineteen dollars and thirty-four cents, instead of the larger sum which Levason claimed; but the Court held that they erred in allowing interest on the sum for which the judgment was entered exceeding ten per cent per annum, and therefore adjudged that the excess of interest charged in the executors' account should be deducted. We cannot presume error; and as the Court held that the executors improperly consented to the entry of a judgment for a higher rate of interest than ten per cent per year, it must be intended the contract did not call for the rate allowed by the executors. The excess amounted to eight hundred and fifty-three dollars and fourteen cents, and the effect of the Court's determination was to charge this sum against the executors by deducting it from their commissions. Without an express contract in writing providing for a higher rate, the executors had no authority to consent that the judgment should bear a greater rate of interest than ten per cent per annum, and therefore they were, notwithstanding they did not purposely intend to exceed their powers, properly held responsible for the excess.

### Commissions of executors.

III. The Court decreed that the executors were not entitled to commissions on the five thousand dollars set apart to the widow in lieu of homestead; and further decreed that com-

puting the percentage on the moneys received by them, this five thousand dollars should be excluded.

When no compensation shall have been provided by the will the executor is entitled to commissions at a rate specified by the statute upon the amount of the whole estate accounted for by him. (Probate Act, Sec. 221.) The two hundred and sixteenth section of the Probate Act makes the executor chargeable in his account with the whole of the estate of the deceased which may come to his possession, at the appraised value contained in the inventory, except as provided in subsequent sections of Chapter Ten of the Act, which in no way affect the question under consideration. It does not appear that when the testator died he and his wife had a homestead. If they had, then upon his death, according to the homestead law then in force, she succeeded to it as an estate held by her and her husband in his lifetime and at the time of his death in joint tenancy. (Laws 1860, p. 311, Sec. 1 ; *In the Matter of the Estate of Orr*, 29 Cal. 101.) But the estate of the deceased, from which the five thousand dollars set apart to the widow in lieu of the homestead was derived, came to the possession of the executors and they were made responsible for the whole estate including the sum so set apart, and were entitled to their commissions thereon in their settlement.

We find no authority in the Probate Act, nor in any other statute, authorizing the Court to set apart money to the widow in lieu of a homestead ; but as no complaint is made on this account, we deem any discussion respecting the power of the Court on the point foreign to the question before us.

So much of the judgment and decree of the Probate Court as charges the executors with the sum of eight hundred and fifty-three dollars and fourteen cents, the amount of interest on the Levason judgment in excess of ten per cent per annum thereon, which they paid on such judgment out of the money of the estate, is affirmed ; and so much of the judgment and decree as disallows to the executors commissions on the five thousand dollars set apart to the widow in lieu of a homestead, is hereby reversed ; and the Court below is directed to reform

the decree in the case, so as to conform to this opinion, and it is further ordered and adjudged that the appellants have and recover the costs of this appeal.