## ESTATE OF JAMES W. CUDWORTH, DECEASED.

[April 30, 1900.]

**Executors—Commissions—Property Set Apart as Homestead.**—The setting apart of a house and lot by the court as a homestead does not affect or impair the executor's right to commissions thereon.

**Executors—Commissions—Extent of Right.**—The executor is entitled to full commissions on all the estate not distributed in kind, or not involving for him labor beyond its mere custody, and, besides this, on property, to the extent of twenty thousand dollars, that is distributed in kind and does not involve such labor for him.

Knight & Heggerty, for Royal Wallace Cudworth, contestant and objector.

A. N. Drown, for executor, Gay Allender Rosenberg.

COFFEY, J. Royal W. Cudworth, one of the heirs, has made and filed certain objections to the items of commissions contained in the executor's final account.

These commissions, as is evident from an inspection of the account, are upon "the amount of the estate accounted for" at the statutory rate.

The will was filed May 19, 1898, and it was admitted to probate and letters testamentary were issued on the 2d day of June, 1898. On July 15, 1898, the executor duly returned an inventory and appraisement of the property now accounted for. Subsequently, on the widow's petition, a certain lot with the dwelling-house thereon was, to wit, on the 3d day of August, 1898, set apart as a homestead.

The first objection is to the allowance of commissions on the property set apart as a homestead which was appraised at $9,000.

The order finds "that during the lifetime of said deceased, no homestead was selected, designated or recorded" by either spouse. Until, therefore, this property was selected, designated and set apart by the court as a homestead, it stood in the same case as all of the other property of the decedent

and it remained and was a portion of the general assets of the estate. The executor became chargeable with it in common with the other property of the decedent and was obliged to list it in his inventory. Even if it had been covered by a homestead, duly declared by the decedent in his lifetime, it would have been inventoried and appraised just the same. The executor is compelled to list "all of the estate of the decedent, including the homestead, if any, which has come to his possession or knowledge": Code Civ. Proc., sec. 1443. Having returned it as property of the estate, he became accountable for it on his bond and in his accounts, whether he reduced it to possession or not. If it came to his "knowledge," he was required to list it equally with property which came immediately to his possession; and afterward, in due time, he would have been compelled to reduce it to possession if the court had not made previous disposition of it. He was compelled to charge himself with it and all other property in his final account at the value of the appraisement thereof contained in the inventory: Code Civ. Proc., sec. 1613.

Having been thus responsible for it, and having thus "accounted for" it (Code Civ. Proc., sec. 1618), it is plain that he is entitled to commissions on its value.

The general rule is that an executor or administrator is entitled to commissions on all of the property of the estate which comes into his hands as assets and is accounted for by him: 11 Am. & Eng. Ency. of Law, 191.

The setting apart of this house and lot as a homestead by the court does not in any way affect or impair the executor's right to commissions thereon: In re Estate of Isaacs, 30 Cal. 112, 113.

The next objection is to the allowance of any commissions upon said estate above the value of $20,000 in excess of one-half of the rates fixed in section 1618, Code of Civil Procedure.

The ground of this objection as given by counsel is "that the property of the estate is to be distributed in kind, and

involved no labor beyond the custody and distribution of the same." The statutory provision referred to is as follows:

"When the property of the estate is distributed in kind, and involves no labor beyond the custody and distribution of the same, the commissions shall be computed on all the estate above the value of $20,000, at one-half of the rate fixed in this section."

The general rule is as above stated. If counsel desire to escape this general provision and get the benefit of the proviso or exception thereto, they must bring their facts within its language and intent. The part of the section quoted does not say, and does not mean, that when any particular piece or item of the property is distributed in kind commissions are only to be allowed at half rates on its appraised value in excess of $20,000. It says, and can only mean, that when the entire property of the estate is distributed in kind, commissions must be so computed, providing always that nothing has been done touching any part of it other than to hold and distribute it.

Counsel have left the court to examine the inventory and the executor's account and report and to ascertain therefrom item by item, whether the whole estate and every part of it is to be turned over in kind exactly as received, and has had nothing done concerning it by the executor except to keep and distribute it. If any part of it is real estate and has involved the labor of letting or collecting rents, or repairing improvements, or keeping buildings insured, or paying taxes, the estate—the whole property of the estate—does not come within the statutory provision referred to. If any part of it consists of a note or a note and mortgage which have been enforced by the executor, on which interest has been collected, indorsements made, satisfaction executed, then the rule cannot apply. If any part of it consisted in stocks on which assessments had to be paid or dividends were collected, then it has involved labor other than that of mere custody and distribution, and the general rule must be applied. If any part of the estate has consisted of claims or demands which

are now represented by the proceeds thereof in the form of money or property, then the full rate on the entire amount of estate accounted for must be allowed.

That this is a reasonable and necessary construction of this statute is plain.

The statute does not provide, and is not to be construed as providing, that if so much or that portion of the estate which exceeds in value $20,000 is distributed in kind and involves no labor, the commissions thereon shall be computed at half rates. Nor does it say that, in an estate exceeding in value $20,000, the commissions on that portion thereof which is distributed in kind and involves no labor, shall be computed at half rates.

If it did, then the practice pursued by this court, and by all the courts of this state, sitting in probate, in allowing commissions, has been erroneous and contrary to law from the beginning. Except in insolvent estate, it would be almost impossible to find an estate which has been here administered upon, in which some portion thereof—some particular piece of property belonging thereto—has not been distributed in kind and involved no labor. And yet, in all such estates, there has heretofore been no apportionment or segregation of the properties for the purpose of computing commissions; but they have been computed on the whole amount of estate accounted for at full rates, wherever any portion of the property had involved labor or was not distributed in kind.

If the statute were to be construed as applying to any estates except those in which all the property is distributed in kind and involves no labor, confusion and difficulties would. at once arise in apportioning and segregating the properties for the purpose of computing commissions. The statute points out no method or rule for making such apportionment. There is no provision made for dividing the properties into two classes or portions, namely:

Class 1. Those which involved labor beyond their mere custody, or which are not distributed in kind; and

Class 2. Those which involved no labor and are distributed in kind.

If, for the purpose of computing commissions, the properties are to be so divided, then from which of these classes is the $20,000 dollars exempted from the rule to be taken?

There is no question but that the executor is entitled to his full commissions on all that portion of the estate which is not distributed in kind, or which did involve labor beyond its mere custody, that is, on all of the property within class 1. The exemption of $20,000 cannot, therefore, refer to this class.

But the legislature has manifested a clear intention that on property to the extent of $20,000, which is distributed in kind, and which did not involve any labor, the executor shall receive his full commissions.

If it be contended, then, that as to all estates exceeding in value $20,000, the statute is to be construed as requiring a computation of commissions on one portion of the estate (class 1) at full rates, and on another portion (class 2) at half rates, it follows, as a matter of course, that the $20,000 exemption is to be taken from class 2. For, it is impossible to place such a construction on the statute without reading it substantially as follows: "In estates exceeding in value $20,000, where any portion of the property is distributed in kind and involves no labor beyond the custody and distribution of the same, the commissions shall be computed on all that portion of the estate above the value of twenty thousand dollars, at one-half the rates fixed in this section."

Hence, if the rule of half commissions has any application or reference to any estate except to those in which all and every part of the property is distributed in kind and involves no labor, if it means that the property of an estate exceeding $20,000 in value, for the purpose of computing commissions, is to be divided into two classes, then it follows that in all estates where such a division and computation becomes necessary, the $20,000 exemption would be utterly without meaning unless it applied to class 2.

This being so, the contestant in this case, in order to reduce the amount of executor's commissions must show clearly and directly the following facts, namely: (1) What portion and how much of the estate falls within class two, on which commissions are to be computed at half rates, and (2) how much, if any, of that portion exceeds in value $20,000.

He has not attempted to do so. There is no showing before the court that the properties of this estate which are to be distributed in kind and involved no labor, and consequently fall within class 2, exceed in value $20,000.

Of course, even if such a showing had been made, unless the statute may be construed as authorizing such a division of the properties of an estate into two classes and a computation of commissions at different rates on each class, as is above referred to, it would be wholly insufficient. Counsel for contestant virtually conceded the correctness of the executor's position and contention, to wit, that the statute only applied to estates in which all the property is distributed in kind and all thereof involved no labor; and that there was and is no such thing contemplated by law as a division of the property into classes, and a computation of commissions at full rates on one class and at half rates on the other class.

The language of the statute is plain and in no way ambiguous. It provides that in a certain specific class of estates, the commissions shall be computed at half rates on all of the property. Unless this estate falls within that class, the statutory provision invoked by counsel does not apply to it. The class of estates referred to includes all those, and only those, estates in which (1) the value thereof exceeds the sum of $20,000, and (2) all the property thereof is distributed in kind and involves no labor beyond the custody and distribution of the same.

If any part of the property of this estate is not "distributed in kind," or if any part thereof involved any labor beyond its mere "custody and distribution," then this estate is not within the class of estates to which this portion of the statute refers or applies.

Inspection of the inventory and account shows that this estate does not fall within the class mentioned and referred to in the statute.

It is true that counsel for contestant contended before this court that, in this estate, all the property, without a single exception, was to be turned over and distributed in kind, and had involved no labor beyond its mere custody; and to support this contention, advanced the proposition that the collection of debts due the decedent, the enforcement and collection of notes and mortgages, the collection of rents from numerous tenants occupying some twenty or more separate tenements contained in fifteen distinct buildings, the finding of new tenants and the letting and reletting of tenements, the keeping in repair of a large number of old buildings, attending to and inquiring into the validity of street assessments, taxes, liens, and charges ascertaining and determining the genuineness and validity of six different claims presented against the decedent, attending to the transfer and exchange of stocks and bonds, and all the labor incidental to the protection and management of the properties constituting the assets of this estate, the collection of the income, issues and profits thereof, did not, either separately or all together, involve any labor, but all came within the definition and meaning of the term "custody" of the property; but counsel cited not a single authority in support of this proposition, simply stating that, as there had been no litigation concerning the assets or properties of this estate, there had been no labor involved in their custody. If any such rule as this exists, or should become established, or should be advanced by this court—if litigation were the test of the executor's labor and right to commissions—there would be an end forever to the peaceful, economical, prudent and wise administration of estates, and the courts would be inundated beneath a flood of litigation. Every executor and administrator would be tempted to indulge, in his official capacity, in the luxury of litigation at the expense of the estate—know-

ing that in no other way could he earn the full commissions. Nothing would have been easier for the executor in this estate than to have brought numerous foreclosure suits and a variety of actions to quiet title. Circumstances sufficient to justify such action on his part could easily have been raised; and, indeed, but for his prudence and good judgment and diplomacy, such action would more than once have become necessary. He might also have indulged in litigation concerning the calling in of the old stock, and the issuance of new stock, of the Pacific Lighting Company, or concerning the surrender and exchange of the old bonds of the Los Angeles Lighting Company; or he might have stubbornly defended the action to quiet title brought against him as executor to which he referred in his testimony, and so involved the estate in tedious and useless litigation. But he did none of these things. Instead, he labored hard to, and succeeded in, adjusting all these matters in a wise, equitable and amicable manner, entirely to the pecuniary advantage and profit of the estate and of all persons interested therein.

Again, the record shows that very many of the properties of this estate will not be, and cannot be, distributed in kind; and this fact alone disposes of the whole question. Thus, of the eleven promissory notes and mortgages received by this executor, five have been collected in full by him, the notes surrendered and the mortgages satisfied; and on each of the other six, interest and considerable portions of the principal have been collected. Counsel, to overcome this fact, advanced the further and additional proposition that, where a note and mortgage are received by an executor, and by him enforced and collected, the distribution of the moneys so collected is a distribution of the note and mortgage in kind. Unless this proposition is absolutely correct and sound, he admits that this estate does not belong to the class to which the rule of half commissions applies. This view of counsel is neither sound nor specious.

Even the six notes which have been collected in part cannot be turned over by the executor in the same condition in

which they were received by him. Then, again, the five bonds of the Los Angeles Lighting Company originally received by the executor were, after due proceedings had, by him surrendered, and they cannot now be distributed in kind. He now holds in place and lieu thereof five other and different bonds. The same is true, also, in some respects of the original one hundred and fifteen shares of stock of the Pacific Lighting Company, in lieu of which he now holds shares of a new and different issue. He has also been called upon, in the course of his administration, to collect more than $7,000 in rents and dividends and interest, and to disburse more than $7,000 in paying the debts of the decedent, and in and about the preservation and management of the properties of the estate; all of which involved considerable labor.

The nature and condition of the assets of this estate have been such as to entail upon the executor far more labor than usually pertains to the administration of an estate of this size; and whether or not it shall at any time become necessary to establish a new rule of practice in computing executor's commissions, and to read into the statute a meaning which cannot now be found within its terms, this estate does not call for the establishment of that rule or for any such interpolation into the statute of anything not now contained therein in order to advance any abstract principle of justice, or for any other purpose. On the contrary, it is clearly established that the executor has faithfully and industriously discharged the duties of his trust in administering this estate and protecting, preserving and managing the properties thereof, and that he has spared no labor or pains in promoting the interests of the estate.

The account is a long one, and shows on its face the labor to which the executor has been put in managing the estate; and the fact that among all the items of this long account, and the transactions involved in their receipt and disbursement, not one can be found which can be made the subject of criticism or contest by the present contestant, excepting only this item of executor's commissions shows how faithfully

and carefully the executor has managed the estate and discharged his duties.

The foregoing contains an accurate exposition of the law on the issue raised by the contestant, and for the reasons therein given the objections are overruled and full commissions are allowed to the executor as estimated in his account.